IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SENEATHA McKINNON,<br><br>                    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC; and LVNV FUNDING<br>LLC,<br><br>                    Defendants. | Civil Action No. 1:23-cv-1755 |

**COMPLAINT**

Plaintiff Seneatha McKinnon, by counsel, files this Complaint against Defendants Experian Information Solutions, Inc.; Equifax Information Services, LLC; Trans Union, LLC; and LVNV Funding LLC ("LVNV") (collectively, "Defendants"). In support of her claims, Ms. McKinnon alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2.      Ms. McKinnon is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

4. The FCRA's purpose is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. As a result of identity theft, Ms. McKinnon's credit report included multiple accounts—including a purported credit card debt now owned by LVNV—that were opened by another without Ms. McKinnon's authorization and not for her benefit.

7. Yet when Ms. McKinnon disputed the LVNV account with Equifax, Experian, and Trans Union, they and LVNV failed to adequately investigate her disputes or remove the fraudulent account from her reports.

8. As a result, Ms. McKinnon alleges claims against Experian, Equifax, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate Ms. McKinnon's disputes.

9. Ms. McKinnon also alleges claims against LVNV for violating the FCRA, § 1681s-2(b)(1), by failing to properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies.

10. Finally, Ms. McKinnon alleges claims against LVNV for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e, by attempting to collect a debt from her that she did not and does not owe.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. McKinnon's claims occurred in this District, where she resides.

## PARTIES

13. Ms. McKinnon is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

14. Experian is a foreign corporation authorized to do business in Virginia through its registered offices in Richmond. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15. Equifax is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

16. Trans Union is a foreign limited liability company authorized to do business in Virginia through its registered offices in Richmond. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. LVNV is a South Carolina limited liability company. It is a "furnisher" as governed by the FCRA. It is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) because, upon information and belief, it uses interstate commerce, including mail, to regularly collect or attempt to collect debts from consumers that are owed to another entity.

## FACTS

18. Ms. McKinnon is the victim of fraud at the hands of an ex-boyfriend, Michael Williams.

19. Mr. Williams used Ms. McKinnon's identity in several ways, including by opening a credit account without her knowledge, permission, or consent.

20. In or around 2020, Ms. McKinnon learned that Michael Williams opened a Credit One credit card in her name without her permission or approval.

21. Ms. McKinnon did not use or benefit from that Credit One credit card.

22. Upon information and belief, that account was sold to LVNV after it was charged off for nonpayment.

23. Beginning in or around 2020, LVNV began dunning Ms. McKinnon for payment on that account.

24. Ms. McKinnon eventually learned that Experian, Equifax, and Trans Union each were reporting the LVNV account on her credit reports.

25. On March 21, 2023, Ms. McKinnon mailed dispute letters to Experian, Equifax, and Trans Union.

26. Ms. McKinnon's dispute letters explained that she was the victim of fraud perpetrated by Mr. Williams and that she did not owe the credit card debt reflected by the LVNV account. Her letters provided information regarding a police report filed in relation to the identity theft.

27. Upon information and belief, Equifax, Experian, and Trans Union forwarded notification of Ms. McKinnon's dispute to LVNV.

28. In response, LVNV failed to adequately investigate Ms. McKinnon's disputes. Instead, it merely conducted a cursory search of its records and confirmed the same information that it previously reported to the credit reporting agencies.

29. When Equifax, Experian, and Trans Union received LVNV's respective responses to Ms. McKinnon's disputes, they relied entirely on LVNV's investigation. None of the credit reporting agencies conducted any other investigation into Ms. McKinnon's disputes.

30. As a result, the inaccurate information about the LVNV account remained on Ms. McKinnon's credit reports.

31. On June 9, 2023, Ms. McKinnon mailed a direct dispute to LVNV, alleging that she did not owe the debt and disputing its validity.

32. That same day, Ms. McKinnon mailed follow-up dispute letters to Experian, Equifax, and Trans Union.

33. Ms. McKinnon's second dispute letters to Experian, Equifax, and Trans Union again explained that she was a victim of fraud and that she did not owe money on the LVNV account. As before, her letters provided information regarding a police report filed in relation to the identity theft.

34. Upon information and belief, Experian, Equifax, and Trans Union each forwarded notification of Ms. McKinnon's second dispute to LVNV.

35. LVNV again failed to adequately investigate Ms. McKinnon's dispute, and Equifax, Experian, and Trans Union again relied entirely on LVNV's inadequate investigation.

36. As a result, the inaccurate information remained on Ms. McKinnon's credit reports.

37. Ms. McKinnon sent more dispute letters to Experian, Equifax, and Trans Union in late June 2023, July 2023, and October 2023, again explaining that she was the victim of identity theft.

38. In response to these disputes, Equifax, Experian, and Trans Union again forwarded Ms. McKinnon's disputes to LVNV.

39. LVNV again conducted an inadequate investigation, and Equifax, Experian, and Trans Union again relied entirely on LVNV's purported investigation without conducting any independent investigations of Ms. McKinnon's disputes.

40. Ms. McKinnon also sent additional dispute letters to LVNV directly in late June 2023 and July 2023, again disputing the validity of the debt and that she owed it.

41. As of this filing, the inaccurate LVNV account remains on Ms. McKinnon's credit reports.

42. And LVNV's collection efforts are ongoing.

43. As a result of Defendants' conduct, Ms. McKinnon has suffered significant actual damages, including a decreased credit score, closed credit accounts, credit denials, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

*Defendants' FCRA Violations Were Willful*

44. As a standard practice, Experian, Equifax, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the

6

response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

45. Upon information and belief and consistent with their standard policies and procedures, Experian, Equifax, and Trans Union automatically generated their "investigation" results once LVNV verified the status of the account, and they did not take any extra actions to verify the accuracy of the information that the furnishers provided.

46. Instead, Experian, Equifax, and Trans Union blindly accepted LVNV's version of the facts and continued to report the inaccurate, derogatory information on Ms. McKinnon's credit reports.

47. Experian, Equifax, and Trans Union continue the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

48. Experian, Equifax, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

49. As a result, at all times relevant to this Complaint, Experian's, Equifax's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under

the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

50. LVNV's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, LVNV's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

51. In addition, the willfulness of LVNV's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and LVNV has had over 50 years to become compliant;

   b. LVNV is a company with access to legal advice through its own general counsel and outside litigation counsel. Yet there is not contemporaneous evidence that LVNV determined that its conduct was lawful;

   c. LVNV knew, or had reason to know, that its conduct contradicted the FCRA's plain language, regulatory guidance, and the relevant case law;

   d. LVNV voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

   e. LVNV's FCRA violations were repeated and systematic;

   f. LVNV had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

   g. LVNV had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

## COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (EXPERIAN, EQUIFAX, and TRANS UNION)

52. Ms. McKinnon incorporates the preceding allegations.

53. Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. McKinnon's credit reports and credit files they published and maintained.

54. Because of Experian's, Equifax's, and Trans Union's conduct, Ms. McKinnon suffered actual damages, including, without limitation, a decreased credit score, closed credit accounts, credit denials, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

55. Experian's, Equifax's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Ms. McKinnon for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

56. In the alternative, they were negligent, which entitles Ms. McKinnon to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681i
### (EXPERIAN, EQUIFAX, and TRANS UNION)

57. Ms. McKinnon incorporates the preceding allegations.

58. Experian, Equifax, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide LVNV with all the relevant information about Ms. McKinnon's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. McKinnon in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from

Ms. McKinnon's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

59. Because of Experian's, Equifax's, and Trans Union's violations of §1681i, Ms. McKinnon suffered actual damages, including, but not limited to, a decreased credit score, closed credit accounts, credit denials, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

60. Experian's, Equifax's, and Trans Union's violations of § 1681i were willful, rendering them liable to Ms. McKinnon for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

61. In the alternative, Experian, Equifax, and Trans Union were negligent, entitling Ms. McKinnon to a recovery under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (LVNV)

62. Ms. McKinnon incorporates the preceding allegations.

63. On one or more occasion within the past two years, LVNV violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. McKinnon's disputes.

64. When Ms. McKinnon disputed the account with the credit bureaus, LVNV used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

65. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

66. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

67. Upon information and belief, the ACDV form is way that LVNV has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

68. Upon information and belief, the credit reporting agencies forwarded Ms. McKinnon's disputes by ACDVs.

69. LVNV understood the nature of Ms. McKinnon's disputes when it received the ACDV forms.

70. Upon information and belief, when LVNV received ACDV forms containing Ms. McKinnon's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

71. Upon information and belief, when LVNV receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

72. Because of LVNV's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. McKinnon suffered actual damages, including a reduced credit score, closed credit accounts, credit denials, embarrassment, humiliation, stress, and other emotional distress.

73. LVNV's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rending it liable to Ms. McKinnon for punitive damages under 15 U.S.C. § 1681n.

74. In the alternative, LVNV was negligent, entitling Ms. McKinnon to a recovery under 15 U.S.C. § 1681o.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
## (LVNV)

75. Ms. McKinnon incorporates the preceding allegations.

76. On one or more occasion within the past two years, LVNV violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

77. As Ms. McKinnon detailed in the previous Count, LVNV has elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

78. When it received the ACDV forms from the credit-reporting agencies, LVNV did not review any of the information that Ms. McKinnon included in her dispute, which demonstrated that LVNV's reporting of the account was inaccurate.

79. If LVNV had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

80. LVNV also ignored the other information that the consumer-reporting agencies provided on Ms. McKinnon's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

81. LVNV knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

82. LVNV does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

83. LVNV understood Ms. McKinnon's disputes and that she was disputing that she owed the claimed amount to LVNV.

84. Despite this, LVNV did not update its incorrect reporting regarding the account and continued to report the inaccurate information about Ms. McKinnon.

85. Because of LVNV's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Ms. McKinnon suffered actual damages, including a decreased credit score, closed credit accounts, credit denials, embarrassment, humiliation, and other emotional distress.

86. LVNV's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

87. In the alternative, LVNV was negligent, entitling Ms. McKinnon to recover damages under 15 U.S.C. § 1681o.

## COUNT FIVE:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (LVNV)

88. Ms. McKinnon incorporates the preceding allegations.

89. LVNV violated the FDCPA, § 1692e, by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, attempting to collect a debt from Ms. McKinnon that she did not owe.

90. Ms. McKinnon suffered actual damages because of LVNV's § 1692e violation, including a decreased credit score, closed credit accounts, credit denials, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

91. Ms. McKinnon is entitled to recover actual damages, statutory damages, her reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Ms. McKinnon demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

<div style="margin-left: 40%;">

Respectfully submitted,
**SENEATHA McKINNON**

By: ___/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*

</div>